FRANKLIN OYER AND TERMINER. July, 1825. Before *Walworth,* Circuit Judge, and *Clark, Bates, Collins* and *Pierce,* county Judges.

## THE PEOPLE *vs.* STEPHEN VIDETO.

In criminal cases, the jury are judges both of the law and facts. They have a right to disregard the opinion of the court in a criminal case, even upon a question of law, if they are fully satisfied that such opinion is wrong. (a)

Presumptive or circumstantial evidence is admissible both in civil and criminal cases, and in prosecutions for some of the worst species of crimes, is often the most satisfactory and convincing that can be produced. The reasons for this opinion stated in a comparison between positive and circumstantial evidence.

The treatise entitled "The theory of presumptive proof, or an inquiry into the nature of circumstantial evidence," which is found bound up with the first American edition of Philips' Evidence, disapproved and declared to be in opposition to the judicial decisions upon that subject; and the eleven cases published in the appendix of that work for the purpose of supporting that theory by illustration, held to be unauthenticated and unreliable.

(a) This is in accordance with the opinion expressed in the last case by the same judge, but is at variance with the law as laid down in The People v. Finnegan, p. 147, and The People v. Crozier, p. 453.

The People *v.* Videto.

The nature of presumptions discussed; and violent presumptions. probable presumptions, and light or rash presumptions described and illustrated by examples, and directions given as to their application, and as to the weight that should be severally given to them.

The prisoner was tried upon an indictment for the murder of Fanny Mosely, by shooting her, in February, 1825. This case depended entirely upon circumstantial evidence. Very few questions of law arose upon the trial, and it is only necessary to notice that part of the charge of the court which relates to the principles which are to govern the jury in deciding a case depending upon circumstantial evidence.

The case was summed up to the jury, upon the law and the facts of the case, by

*A. Hascall,* (Dist. Att'y,) and *E. C. Gross,* for the people.

*W. Swetland* and *J. Lynde,* for the prisoner.

*By the Court,* WALWORTH, J.—After stating to the jury that in criminal cases they were judges both of the law and the facts, that the decision of the questions of fact belonged exclusively to them, and that they also had a right to disregard the opinion of the court, in a criminal case, even upon a question of law, if they were fully satisfied that such opinion was wrong, proceeded as follows:

The decision of this case, gentlemen of the jury, depends altogether upon what is called presumptive or circumstantial evidence. This species of evidence is admissible, both in civil and in criminal cases, but more frequently in the latter, because it is adopted the more readily in proportion to the difficulty of establishing facts by positive testimony. In cases of murder and other crimes of the higher grades which are usually committed in secret, it is frequently the only evidence which can be adduced to substantiate the fact of the commission of the crime. Philips, in his excellent treatise on the law of evidence, says that in prosecutions for some of the worst species of crimes, this kind of evidence will often be the most satisfactory

The People *v.* Videto.

and convincing that can be produced; and the remarks of this elementary writer have been sanctioned by the opinions of many of the most eminent judges.

There can be no doubt of the truth of this observation in those cases where there are many separate circumstances, proved by several different witnesses, all tending to the same point and necessarily producing the same result. For it is a valuable maxim of the law, notwithstanding what some visionary writers have said to the contrary, that " *circumstances can not lie.*" It is true circumstances may be proved by witnesses, and those witnesses may lie. But it is also true that if a corrupt witness intends, by perjury, to convict an innocent man, such witness will be much more likely to swear positively to the fact of the commission of the crime, than to circumstances which alone may not have the desired effect to convict the object of his malice.

In most cases of conviction upon presumptive proof or circumstantial evidence, there are many different witnesses swearing to several distinct circumstances, all tending to the same result, each of which circumstances is a necessary link in the chain of evidence required to produce a conviction of the accused; and there is therefore the less danger of perjury in such cases in consequence of the number of perjured witnesses which it would be necessary for the prosecution to produce to effect an unjust conviction. For if one perjured witness should swear to a fact forming only one link in a chain of circumstances, the rest of the witnesses being honest he will be in danger of detection from the discrepancy between his testimony and theirs; when he might have sworn positively, but falsely, to the commission of the crime, by the accused, without the possibility of being contradicted. For this reason, although from the imperfection and uncertainty which must ever exist in all human tribunals, I have no doubt that there have been cases in which innocent persons have been convicted on presumptive proofs, yet from my knowledge of criminal jurisprudence, both from reading and from observation, I have no hesitation in expressing the opinion that where there has been one unjust conviction

upon circumstantial evidence alone, there have been three innocent persons condemned upon the positive testimony of perjured witnesses. I speak more particularly in reference to that country from which our laws have mostly been derived. Fortunately for the people of the United States, perjury has seldom, in any shape, connected itself with prosecutions for any of the higher offences in our courts of justice.

Much has been read to you, as law, during this trial, from a treatise called, " The Theory of Presumptive Proof, or, an Inquiry into the nature of Circumstantial Evidence." This " theory," which is the production of an anonymous English writer, has been republished in this country, and is found bound up with the first American edition of Philips's Treatise on the Law of Evidence, and has frequently been confounded with that valuable work. But it is my duty to tell you, that the theory of this anonymous writer, which the American editor has published, and had bound up in the same volume with Philips's treatise, is not considered as law by the courts in this or any other country. It is an attempt, by a theoretical writer, to overturn the decisions of the judges of the superior courts in England, and to set up his individual opinion in opposition to the law as settled in the courts of justice both there and here.

This writer has remarked very freely, and in some instances very justly, upon the case of Captain Donnellan, who though he was probably guilty of the murder of his brother-in-law, was convicted upon very slight circumstantial evidence, if his case is correctly reported. In addition to his " theory," the writer, in an appendix to his work, has collected eleven cases, for the purpose of illustrating his ideas, and to show the danger of convicting upon circumstantial evidence. These cases have been seized on with avidity, and are generally read and commented upon by those who are engaged in the defence of criminals, whether the evidence against the accused is positive or only circumstantial.

In most of the cases stated in that appendix, it is said the accused were unjustly convicted, and that it was afterwards ascertained they were innocent. But, in nearly all of those

cases, the fact of the innocence of the accused depends alto-gether upon hearsay, or tradition.

It is but a few years since a story was published in nearly all of the newspapers of the United States, that a man by the name of Hamilton had been condemned and executed in one of the western states, and that his innocence was afterwards clearly established, by the confession of the man who had actually committed the murder. This story, for a time, gained entire credit, and was generally believed wherever it was told. Yet, fortunately for the administration of justice, the report of his innocence was discovered to be a base fabrication, put in circulation by some of his surviving friends for the purpose of removing a stigma from the name of the man who had justly suffered the penalty of the law for a most wicked and aggravated robbery and murder. It is not improbable that some of the cases collected in his appendix, by the anonymous writer, before referred to, are cases of that description. But if they were all supported by well attested facts, they would not in the least diminish the weight which ought to be given to circumstantial evidence. For upon examination, it will be found that most of those cases were convictions upon the positive testimony of mistaken or perjured witnesses.

His honor then adverted particularly to each of the cases stated in that appendix, and observed that they only went to support the opinion he had before expressed, that there were more unjust convictions upon the positive testimony of mistaken or perjured witnesses, than from erroneous conclusions of juries in deciding upon circumstantial evidence.

He then commented upon the nature of presumptions, which he told the jury were of three kinds:

1. *Violent Presumptions.*—Where the facts and circumstances proved would necessarily attend the fact presented. As if your horse had been shot in the stable by a musket ball, and it was proved that a man was seen immediately before to load his gun and go into the stable; that the report of a musket was heard in the stable, and that the man immediately came out with his gun unloaded and fled. These circumstances would raise a

violent presumption that the man shot the horse, because the loading of the gun, the report in the stable, and the gun being unloaded when he came out, are all facts which must necessarily attend the fact presumed; to wit, that he shot the horse. And upon such testimony, unexplained, it would be the duty of a jury to give a verdict against him, equally as it would be if the shooting of the horse was positively sworn to by the same witness. For in either case, if the witness was to be credited, there could be no reasonable doubt of the guilt of the accused, although there was a possibility of his innocence.

2. *Probable Presumptions.*—Where the facts and circumstances proved, usually attend the fact presumed. As if your horse is stolen, and shortly thereafter he is found in the possession of the accused, who refuses to give any explanation as to the manner in which the horse came into his possession. These circumstances raise a probable presumption that the accused committed the theft. It is every day's practice to convict on such circumstantial evidence, if the transaction is unexplained.

3. *Light or Rash Presumptions.*—When the facts and circumstances proved might probably attend the fact presumed. As if a man gave medicine to his wife, and she died shortly afterwards, it would be a *light* presumption of the fact that he had given her poison instead of medicine, and could not legally authorize his conviction for murder.

But, he said, there are many circumstances which, taken separately, would only amount to *light* or *rash* presumptions, and as such entitled to no weight, which, if they were well proved and connected together in one case, might amount to *probable* or even to *violent* presumption of guilt. As if a wife die very suddenly, with the usual symptoms of having been poisoned. It is proved that she and her husband were on ill terms; that he had threatened her life; that he gave her liquor to drink shortly before those symptoms appeared; that he was seen to put something into the bottle of liquor; that he purchased arsenic the day before; that the bottle being inquired for he immediately flung away the liquor remaining therein;

The People. *v.* Videto.

that he gave no satisfactory account of what had been done with the arsenic; that he caused her to be buried unusually soon after her death; that the contents of her stomach being analyzed were found to contain arsenic. Each of these circumstances, taken by itself, and perhaps two or three of them together, would be nothing more than *rash* or *light* presumptions of the guilt of the husband. But if all the circumstances I have enumerated were satisfactorily proved by credible witnesses and were left unexplained by the accused, they might, when taken together, carry irresistible conviction to the minds of the jury that he had killed his wife by poison. This is what is called a chain of circumstances. And in proportion to the number, to the strength and to the close connection of the links of which that chain is composed, must be its power to draw the minds of the jury to the conclusion of fact which it is intended to establish.

As the facts and circumstances in each particular case must be in some respects necessarily peculiar and different from all others, it is very difficult to lay down general rules for the guide of jurors in such cases. One rule, however, which ought never to be departed from, is that no one should be convicted of murder upon circumstantial evidence, unless the body of the person supposed to have been murdered has been found, or there be other clear and irresistible proof that such person is actually dead. *Secondly.* Each circumstance should be satisfactorily established by evidence, and should not be presumed by an assumption of the fact that the accused is guilty. *Third.* The jury should give as much weight to each circumstance which is in favor of the accused, as they do to circumstances of the same importance against him. *Fourth.* If the existence of any circumstance against the accused is not established beyond all reasonable doubt, the jury, in favor of life, should reject such circumstance. *Fifth.* The jury should always act upon the presumption that the accused is innocent, and should endeavor, if possible, to reconcile all the circumstances of the case with that side of the question. And in such cases it is also proper that the former good character of the accused, if it

was good, should be taken into consideration, and given its full weight in behalf of the accused.

His honor told the jury that these were the principles and rules by which they should be governed in the decision of this cause, and requested their undivided attention while he examined the testimony, for the purpose of bringing the principal facts to their recollection, and to assist them in the examination of the evidence. He reminded them that the question of the prisoner's guilt or innocence was one which it belonged to them exclusively to decide, and added that if, in commenting upon the testimony, he should, unintentionally, intimate any opinion upon that question, they must reject it, and found their verdict upon their own unbiassed convictions, arising from the testimony before them. He then examined the testimony in the case at length, and concluded by observing that if the jury, after a careful examination of all the circumstances, could by the assistance of their reason, reconcile the facts with the innocence of the prisoner, it would be their duty, as he had no doubt it would be a pleasure, to pronounce a verdict of acquittal. But if, on the contrary, after they had fully examined and reasoned upon the testimony, they should find the dreadful truth pressing upon their minds with such irresistible force as to remove therefrom every rational doubt of the prisoner's guilt, it would be their imperious duty to pronounce, as the result of their deliberations, that he was guilty of the felony, and murder charged in the indictment.

The prisoner was convicted, and subsequently executed.